**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Kobalt Music Publishing America, Inc. Coordinated Copyright cases | 24-cv-05454 (ER) (BCM)<br>24-cv-05455 (JAV) (BCM)<br>24-cv-05456 (AKH) (BCM)<br>24-cv-05457 (JGK) (BCM)<br>24-cv-05458 (VM) (BCM)<br>24-cv-05459 (JAV) (BCM)<br>24-cv-05460 (LJL) (BCM)<br>24-cv-05462 (GHW) (BCM)<br>24-cv-05463 (JLR) (BCM)<br>24-cv-05464 (JGK) (BCM)<br>24-cv-05465 (GHW) (BCM)<br>24-cv-05466 (JHR) (BCM) |
| *This filing relates to:* | |
| All Coordinated Cases | |

**NONPARTY TUNESAT, LLC'S OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL**

TAYLOR & COHEN LLP
Robert Cohen
305 Broadway, 7th Floor
New York, New York 10013
Tel. (212) 257-1901

New York, New York
March 27, 2025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

BACKGROUND .................................................................................................................. 1

    I.    TuneSat's data collection business. ............................................................................ 1

    II.   The shared legal and factual framework of the Coordinated Cases
        and the Magic Litigation. ........................................................................................ 3

    III.  The Magic Litigation: Defendant's subpoenas, TuneSat's production,
        and Judge Rakoff's rulings. ..................................................................................... 4

        A.   The Data Subpoena ...................................................................................... 4

        B.   The Communications Subpoena ................................................................. 5

        C.   Judge Rakoff's rulings. ................................................................................ 6

    IV.  The Coordinated Defendants' document requests and
        TuneSat's objections................................................................................................ 7

ARGUMENT ........................................................................................................................ 7

    I.    The January 20 Subpoenas seek communications that are based
        on excessive speculation and are irrelevant to Defendants' statute
        of limitations defense. ............................................................................................ 7

    II.   The document requests seek communications protected from disclosure
        by Federal Rule of Civil Procedure 26(b)(3). ........................................................ 9

        A.   The communications requested were generated by TuneSat in
            anticipation of litigation. ............................................................................. 9

        B.   Defendants cannot demonstrate the "substantial need" required to
            overcome the protections of Rule 26(3)(b). ............................................... 11

    III.  The January 20 Subpoenas' document requests are overly broad
        and reveal Defendants' true purpose. .................................................................... 12

CONCLUSION .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Center v. Hampton Affiliates, Inc.*,
  66 N.Y.2d 782, 488 N.E.2d 828 (1985) ....................................................................... 13

*EFCG, Inc. v AEC Advisors, LLC*,
  19-cv-8076, 2020 WL 6378943 (S.D.N.Y. Oct. 30, 2020) ......................................... 10

*Great American Ins. Co. of New York v. Castleton Commodities Intern. LLC*,
  15-cv-2976, 2015 WL 6955176 (S.D.N.Y. Nov. 3, 2015) .......................................... 10

*R.F.M.A.S., Inc. v. So*,
  06-cv-131142008, 2008 WL 465113 (S.D.N.Y. Feb. 15. 2008) ................................ 11

*United States Sec. & Exch. Com"n v. Collector's Coffee Inc.*,
  337 F.R.D. 70 (S.D.N.Y. 2020) .................................................................................. 10

*United States v. Adlam*,
  134 F.3d 1194 (2d Cir.1998) ...................................................................................... 10

*United States v. Mount Sinai Hosp.*,
  185 F. Supp. 3d 383 (S.D.N.Y. 2016) .......................................................................... 9

Rules

Federal Rule of Civil Procedure 26(b)(3) .................................................................... 11

## PRELIMINARY STATEMENT

Defendants' motion to compel relies on an incomplete record and a misapprehension of TuneSat's reasons for opposing the subpoenas. As explained below, Defendants' motion to compel should be rejected for three reasons. First, the document requests seek information that is protected by the work-product doctrine. Second, the information sought is based on excessive speculation. Third, the requests are facially overbroad.

## BACKGROUND

### I.   TuneSat's data collection business.

TuneSat is an independent audio monitoring service. Using proprietary audio recognition technology, TuneSat locates "detections" or "uses" of its clients' music, together with related technical data, across an array of internet and broadcast-based content. (Declaration of Christopher Woods ("Woods Decl.") ¶ 2).

Broadly speaking, TuneSat's technology works by cataloging and archiving audio-visual content across internet sources. TuneSat then uses its proprietary "acoustic fingerprint" technology to identify uses of a client's music in audio-visual content it has archived. Acoustic fingerprinting works by analyzing waveforms and extracting the unique characteristics of an audio file. The resulting output—an acoustic fingerprint—is a condensed representation of an audio signal that captures its signature and allows it to be differentiated from other sounds. (Woods Decl. ¶¶ 3-5, 7).

TuneSat uses this fingerprinting technology to track music and audio content across various platforms and hundreds of networks in countries around the world,

including the United States, United Kingdom, Germany, France, Spain, and Italy. TuneSat then uses its fingerprinting technology to process the downloaded media looking for matches against the reference database. When the technology confirms a match, which TuneSat calls a "detection," information about the detection is recorded in TuneSat's systems. This is an automated process. (Woods Decl. ¶¶ 6, 8).

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████ (Woods Decl. ¶ 9).

At no point in this process does TuneSat decide that a client has a copyright claim. That determination is made by lawyers. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ TuneSat does not make any determinations concerning fair use, licensing, statute of limitations, or any other issues related to a copyright claim. (Woods Decl. ¶ 10).

After TuneSat has run its acoustic fingerprinting algorithm ███████ ████████████████████, it generally provides the data for the remaining detections and uses to a law firm. For the purposes of the Coordinated Cases, that law firm was Kuhn Law Group PLLC. (Woods Decl. ¶ 11).

2

## II. The shared legal and factual framework of the Coordinated Cases and the Magic Litigation.

*Artist Publishing Group v. Orlando Magic*, No, 24-cv-5461 ("*Orlando Magic*" or "Magic Litigation") is before Judge Rakoff and is not part of the Coordinated Cases. That said, it shares fundamental similarities with the lawsuits that are coordinated for discovery. The same counsel represents the parties across all litigations. The complaints follow nearly identical formats and content, with modifications limited to party-specific information and particular alleged infringements. Additionally, in all the cases, TuneSat's contractual relationship is confined to a single plaintiff—Kobalt Music Publishing America, Inc. ("Kobalt").

Finally, in the Coordinated Cases and the Magic Litigation, each defendant has asserted the identical statute of limitations affirmative defense, verbatim: Plaintiffs, "through their agents, had all of the information necessary to file suit and obtain relief more than three years prior to the filing of the Complaint." *Artist Publ'g Grp., LLC v. Trail Blazers, Inc.*, No. 24-cv-5464, Dkt. No. 19, ¶ 46 (Oct. 15, 2024).[1] Specific to TuneSat, each defendant asserts that plaintiffs, "through their agents, employed software programs to search the Internet for uses of music, which programs created a database of accused uses (the 'Archive')." *Id.* Each defendant then alleges, "[o]n information and belief, the Archive identified uses which are the subject of this Complaint" and that this identification occurred more than three years before plaintiffs initiated the lawsuit. *Id.*

---

[1] The answer of the Portland Trail Blazers is referenced as an exemplar. As noted, the quoted language is included verbatim in the answers for the remaining Defendants in the Coordinated Cases.

3

### III. The Magic Litigation: Defendant's subpoenas, TuneSat's production, and Judge Rakoff's rulings.

In the Magic Litigation, the Orlando Magic served TuneSat with two subpoenas for documents. For the purposes of this motion, they are called the Data Subpoena and the Communications Subpoena.

#### A. The Data Subpoena

The Orlando Magic served TuneSat with the Data Subpoena in November 2024. The subpoena's document requests did not call for any communications. Instead, the requests covered data and select agreements that the Orlando Magic sought in support of its statute of limitations defense:

| No. | Request |
|---|---|
| 1 | Produce each contract, agreement, or arrangement between TuneSat and any or all of the Kobalt Group. |
| 2 | Produce each contract, agreement, or arrangement between TuneSat and Kuhn Law concerning access to TuneSat's search services. |
| 3 | Produce a complete copy of any Archived Version of the Media Sites relating to the Orlando Magic, including any documentation evidencing the date on which such Archived Version was created.[2] |
| 4 | For any search of the Media Sites by TuneSat on behalf of itself, Kuhn Law, or any of the Kobalt Group relating to the Orlando Magic, produce a complete copy of the Detection Results associated with such searches. |
| 5 | For each of the Subject Songs for which TuneSat generated an Acoustic Fingerprint, produce the associated creation and usage data for such Acoustic Fingerprint. This request specifically seeks data demonstrating the dates on which the Acoustic Fingerprint was created and the date on which TuneSat performed any Internet search to create such Acoustic Fingerprint. |

---

[2] During the meet-and-confer, the Orlando Magic modified Request No. 3.

4

TuneSat agreed to produce documents responsive to Request 1. It did not possess documents responsive to Request 2. The remainder of the requests were the subject of letter motion practice before Judge Rakoff. After briefing, Judge Rakoff ordered TuneSat to produce data responsive to the requests as modified in the meet-and-confer. *See* Order, *Orlando Magic*, Dkt. No. 34 (Jan. 14, 2025).

Pursuant to Judge Rakoff's Order, TuneSat produced a detections results report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for each of the alleged infringing uses in the complaint. It also produced a chart with several data entries for each of the alleged infringing uses in the complaint. A copy of the chart is attached as Exhibit 1 to the Woods Declaration. *See also* Woods Decl. ¶¶ 13-14 (explaining production).[3]

### B. The Communications Subpoena

The Orlando Magic served TuneSat with the Communications Subpoena in January 2025. The subpoena's document requests did not call for any data. Instead, they sought only communications:

| No. | Request |
|---|---|
| 1 | All emails and other Communications relating to the Orlando Magic. |
| 2 | All emails and other Communications relating to actual or proposed searches of any Media Sites relating to the Orlando Magic, including but not limited to emails or other Communications relating to Detection Results associated with such searches. |
| 3 | All emails and other Communications reflecting or otherwise relating to the date or dates on which TuneSat generated an Acoustic Fingerprint for each of the Subject Songs. |

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the detections result report is not attached to Mr. Woods' Declaration.

| No. | Request |
|---|---|
| 4 | All emails and other Communications reflecting or otherwise relating to the date or dates on which TuneSat performed any Internet search to create such Acoustic Fingerprint for each of the Subject Songs. |
| 5 | All document retention notices, litigation hold notices, or other documents or Communications related to TuneSat's obligation to retain documents and information related to the litigation captioned *Artist Publishing Group, LLC, et al. v. Orlando Magic, Ltd.*, No. 1:24-cv-5461-JSR, in the United States District Court for the Southern District of New York. |

TuneSat objected to the production of any documents called for in the Communications Subpoena.

    C.    **Judge Rakoff's rulings.**

Shortly after it served TuneSat with the Communications Subpoena, the Orlando Magic claimed that TuneSat's production under the Data Subpoena was deficient. The parties thus appeared before Judge Rakoff on two issues: TuneSat's production under the Data Subpoena and TuneSat's objections to the Communications Subpoena.

After a telephonic conference, Judge Rakoff issued a Minute Order. He quashed the Communications Subpoena. He also ordered briefing on the Orlando Magic's demand for additional production under the Data Subpoena. *See* Minute Order, *Orlando Magic*, (Jan. 27, 2025).

On January 30, Judge Rakoff rejected the Orlando Magic's demand that TuneSat produce additional information under the Data Subpoena. His ruling was short, yet to the point:

> TuneSat has more than reasonably replied to the requests that the Magic made. Defendant's further requests for

6

> materials beyond those already provided involve multiple and excessive speculations and are therefore denied.

Ex. 3 (Order, *Orlando Magic*, Dkt. No. 38 (Jan. 30, 2025)).

IV. **The Coordinated Defendants' document requests and TuneSat's objections.**

In late January, the Coordinated Defendants served TuneSat with a subpoena containing four document requests (the "January 20 Subpoenas"). These documents requests are identical to the first four requests in the Communications Subpoena served by the Orlando Magic.

For each of the Coordinated Cases, TuneSat agreed to produce the same type of data it produced in the Magic Litigation. TuneSat, however, objected to the production of documents in the January 20 Subpoenas' document requests. TuneSat objected on the grounds that the requests (i) seek communications that are protected by the work product doctrine; (ii) are improperly based on speculation and seek documents that are not relevant to the Coordinated Defendants' statute of limitations defenses; and (iii) are overly broad.

## ARGUMENT

I. **The January 20 Subpoenas seek communications that are based on excessive speculation and are irrelevant to Defendants' statute of limitations defense.**

For each of the Coordinated Cases, TuneSat agreed to provide Defendants the following data from its databases: (i) ████████████████████████████████████████████████████████████████ ; (ii) ████████████████████████████████████████████████ and (iii) ████████

7

██████████████████████████████████████████████

██████████████ Additionally, TuneSat agreed to provide Defendants with detection results reports. Each report contains ████████████ data related to TuneSat's automated detection of each infringing use alleged in the complaints. This is the identical type of data TuneSat delivered to Defendants' counsel in the Magic Litigation.

As noted above, in the Magic Litigation, Judge Rakoff held that TuneSat "more than reasonably replied to the requests that the Magic made" when it provided this data. Denying the Magic's demand for additional data, he held that demand rested on "multiple and excessive speculations."

Judge Rakoff's ruling is not strictly binding here, but it is highly persuasive—especially given the identical legal and factual issues in both cases. True, he did not specifically address Defendants' request for TuneSat's communications. But his reasoning applies with even greater force here. If the Orlando Magic's demands for additional data rested on "multiple and excessive speculation" (as Judge Rakoff found), then Defendants' demands for communications—which stand at an even greater remove from the relevant issues—necessarily involve even more attenuated speculation.

What is more, in the Magic Litigation, Defendants' counsel insisted the TuneSat data established its statute of limitations defense conclusively. Their summary judgment motion dedicates nearly five pages to this data, arguing it proves beyond genuine dispute that TuneSat (as Kobalt's alleged agent) knew or

8

should have known about the alleged infringements more than three years before plaintiffs filed suit. *See* Orlando Magic Memorandum of Law, *Orlando Magic*, Dkt. No. 61, pp. 13-17 (Feb. 14, 2025).

The logic of Judge Rakoff's decision compels denial of this motion.[4] So too do Defendants' counsel's own arguments in the Magic Litigation. Having previously treated TuneSat's data as definitive evidence for their statute of limitations defense, Defendants counsel cannot now credibly claim it needs communications that are even more removed from the core issues than the data it championed as conclusive.

## II. The document requests seek communications protected from disclosure by Federal Rule of Civil Procedure 26(b)(3).

### A. The communications requested were generated by TuneSat in anticipation of litigation.

The work-product doctrine shields the communications Defendants seek. Federal Rule 26(b)(3) prohibits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial." Discovery of such materials requires both "substantial need" and an inability to obtain equivalent information without "undue hardship." *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016) (Moses, J.).

This protection extends beyond lawyers' work. *See id.* (noting rule that to be eligible for work product protection, "a document need not be prepared by a lawyer"). The key question is not who created the document but whether it was

---

[4] Defendants may argue that Judge Rakoff did not have the benefit of the deposition testimony of Kobalt's Rob Christensen when ruling. *See* Defs. Mem, Ex.B. But this testimony merely confirms that Kobalt and TuneSat communicated with one another. TuneSat does not contest—and has never contested—this fact.

9

prepared "in anticipation of litigation." *EFCG, Inc. v AEC Advisors, LLC*, 19-cv-8076, 2020 WL 6378943, at *2 (S.D.N.Y. Oct. 30, 2020) (Moses, J.). Courts apply a practical test: was the document created "because of the prospect of litigation"? *Id.* (quoting *United States v. Adlam*, 134 F.3d 1194, 1196 (2d Cir.1998)). Work product protection applies whenever "there is a real, identifiable prospect of litigation, even if contingent." *Great American Ins. Co. of New York v. Castleton Commodities Intern. LLC*, 15-cv-2976, 2015 WL 6955176, at *2 (S.D.N.Y. Nov. 3, 2015) (cleaned up). *See also United States Sec. & Exch. Com"n v. Collector's Coffee Inc.*, 337 F.R.D. 70, 76 (S.D.N.Y. 2020), *objections overruled*, No. 19-cv-4355, 2021 WL 391298 (S.D.N.Y. Feb. 4, 2021) (holding that Rule 26(b)(3) shielded from disclosure interviews conducted to identify potential litigation targets).

TuneSat created the communications Defendants seek in preparation for the prospect of litigation. As Mr. Woods explains in his declaration, TuneSat exists to help copyright holders identify and pursue infringement claims—litigation preparation is a core function. (Woods Decl. ¶ 2). TuneSat locates "detections" of clients' works in videos posted online, then provides this data to lawyers who determine which detections constitute actionable copyright claims.

Notably, Rule 26(b)(3) protects this work even when settlement occurs. Failed negotiations, like those here, often lead to court. TuneSat gathers data for lawyers with the understanding that litigation remains a realistic possibility. Every TuneSat engagement thus involves "a real, identifiable prospect of litigation, even if contingent." *Great American*, 2015 WL 6955176, at *2.

While not reduced to writing, Judge Rakoff determined that the ***data*** he compelled TuneSat to produce to the Orlando Magic was unprotected by the work product doctrine. But the January 20 Subpoenas seek ***communications***, not data—a distinction that matters.

Unlike raw data, communications reveal TuneSat's analytical process—how it selects, assesses, and prioritizes social media channels and videos with potential infringing uses of its clients' music. These communications expose TuneSat's specialized methodology for identifying potentially actionable claims for lawyers to pursue—a proprietary process developed specifically to prepare copyright holders for litigation. The communications sought here fall within this protected category.

**B.      Defendants cannot demonstrate the "substantial need" required to overcome the protections of Rule 26(3)(b).**

Rule 26(b)(3) permits discovery of work product only when a party "has substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means." F.R.C.P. 26(b)(3). Defendants fail this test for a simple reason: TuneSat, as explained above, has promised them the very data that, in a nearly identical litigation, their own counsel insisted was sufficient to establish their statute of limitations defense "as a matter of law."

Defendants may desire a fishing expedition through TuneSat's communications. But desire does not equal need—especially substantial need. *See R.F.M.A.S., Inc. v. So,* 06-cv-131142008, 2008 WL 465113, at *1 (S.D.N.Y. Feb. 15, 2008) (holding that "plaintiff has not shown the requisite compelling need for the document that would justify overriding the normal work-product immunity" where

11

the information plaintiff seeks contains "nothing else that would materially add to or change its case for" its statute of limitations defense). The law demands more than curiosity or convenience to overcome work-product immunity.

### III. The January 20 Subpoenas' document requests are overly broad and reveal Defendants' true purpose.

These overbroad requests, viewed alongside Defendants' counsel's summary judgment arguments in the Magic Litigation, expose a telling truth: Defendants do not really care about gathering data related to a statute of limitations defense. Defendants' counsel is a repeat player, defending copyright infringers in multiple disputes where TuneSat has gathered evidence for the plaintiffs. Counsel is using discovery to engage in a wide-ranging fact finding mission untethered to the Coordinated Cases.

For example, Requests 1 and 2 extend beyond both the songs at issue in the complaints and TuneSat's detection work for Kobalt. Request 3 suffers from identical defects—it reaches beyond TuneSat's work for Kobalt and also encompasses communications with entities entirely absent from the Coordinated Cases.[5]

This expansive sweep of information bears no rational relationship to Defendants' statute of limitations defenses or to Kobalt's due diligence obligations. Defendants cannot credibly explain how communications relating to songs or

---

[5] TuneSat stated in its responses and objections to the January 20 Subpoenas' document requests that it is not in possession, custody or control of documents responsive to Request 4.

12

entities not referenced in any of the complaints are remotely relevant to their statute of limitations defenses. Similarly, Defendants have no plausible basis to claim a statute of limitations relevance for communications concerning work that TuneSat performed for clients other than Kobalt. Assuming for the sake of argument that TuneSat is an agent of Kobalt, the information TuneSat acquires for a different client is not imputed to Kobalt. *See, e.g.*, *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784, 488 N.E.2d 828, 829 (1985) ("The general rule is that knowledge acquired by an agent *acting within the scope of his agency is imputed to his principal* and the latter is bound by such knowledge although the information is never actually communicated to it.") (emphasis added). Defendants' argument turns this black-letter principle on its head.

    To be clear, no amount of tinkering could salvage these fundamentally flawed document requests. The Court should deny the motion to compel in its entirety. The analysis above simply illuminates what truly motivates the January 20 Subpoenas—not legitimate discovery but an improper fishing expedition.

    Finally, Defendants misconstrue TuneSat's position on its discovery obligations, creating a straw man while simultaneously spouting incorrect information. (Def. Mem. pp. 7-8). TuneSat, contrary to what Defendants say, does not have a claim to ▮▮▮ of any recovery in the Coordinated Cases. TuneSat's portion of any recovery in these litigations is ▮▮▮▮▮▮▮▮ (Woods Decl. ¶ 12). Defendants' counsel knows this because TuneSat revealed it in a declaration from Chris Woods during summary judgment briefing in the Magic Litigation. Yet

13

Defendants persist.[6] In any event, TuneSat does not claim any special shield from third-party discovery obligations. It seeks only those protections provided by the Federal Rules of Civil Procedure and applicable precedent—nothing more, nothing less.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion to compel TuneSat to produce documents responsive to the January 20 Subpoenas' documents requests.

Dated: March 27, 2025
        New York, New York

                                Respectfully submitted,

                                _____
                                Robert Cohen
                                TAYLOR & COHEN LLP
                                305 Broadway, 7th Floor
                                New York, New York 10017
                                rcohen@taylorcohenllp.com
                                (212) 257-1901
                                *Attorneys for Non-Party TuneSat, LLC.*

---

[6] Equally baseless is Defendants' assertion that TuneSat has conceded the relevance of the requested documents. (Defs. Mem. p. 7). No such concession exists.

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Kobalt Music Publishing America, Inc. Coordinated Copyright cases<br><br>*This filing relates to:*<br><br>All Coordinated Cases | 24-cv-05454 (ER) (BCM)<br>24-cv-05455 (JAV) (BCM)<br>24-cv-05456 (AKH) (BCM)<br>24-cv-05457 (JGK) (BCM)<br>24-cv-05458 (VM) (BCM)<br>24-cv-05459 (JAV) (BCM)<br>24-cv-05460 (LJL) (BCM)<br>24-cv-05462 (GHW) (BCM)<br>24-cv-05463 (JLR) (BCM)<br>24-cv-05464 (JGK) (BCM)<br>24-cv-05465 (GHW) (BCM)<br>24-cv-05466 (JHR) (BCM) |

**WORD COUNT CERTIFICATION**

I certify that this memorandum of law contains 3,312 words, excluding the caption, table of contents, table of authorities, and signature block, as determined by a word count tool of Microsoft Word, the word-processing system used to prepare the document.

Dated: March 27, 2025
         New York, New York                    _____
                                               Robert Cohen
                                               TAYLOR & COHEN LLP
                                               305 Broadway, 7th Floor
                                               New York, New York 10017
                                               rcohen@taylorcohenllp.com
                                               (212) 257-1901

                                               *Attorneys for Non-Party TuneSat, LLC.*